IN THE MATTER OF ROBERT W. HILL, APPELLANT, v. CITY
OF CAMDEN AND NEW JERSEY CIVIL SERVICE
COMMISSION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1982—Decided July 19, 1983.

Before Judges BOTTER and POLOW.

*Barry J. Wendt* argued the cause for appellant (*Donald W. Moore,* attorney; *Barry J. Wendt,* on the brief).

*Mark M. Cieslewicz,* Assistant City Attorney, argued the cause for respondent City of Camden (*Laurence E. Rosoff,* City Attorney, attorney; *Mark M. Cieslewicz,* on the brief).

*Mark J. Fleming,* Deputy Attorney General, argued the cause for respondent Civil Service Commission (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Mark J. Fleming,* on the brief).

The opinion of the court was delivered by

BOTTER, P.J.A.D.

This is an appeal from a decision of the Civil Service Commission which affirmed the City of Camden's denial of pay during the leave of absence granted to appellant Robert W. Hill, a Camden Police Officer who was also in the National Guard, for a four-week period while he voluntarily attended courses at a United States Army Intelligence School.

Appellant requested a leave of absence with pay to attend six weeks of courses at the Army Intelligence School in Ft. Bragg, North Carolina during the summer of 1981. The courses of instruction had been offered through a military circular to all personnel who were qualified and wished to attend. Appellant's attendance was voluntary, although he contended that the leave was incidental to his duties in the National Guard and was essential for maintaining his proficiency as an Intelligence Analyst. Appellant's leave of absence was granted after an initial dispute, but the Chief of Police advised appellant that he would not be paid by the municipality while he was on leave. Appellant later reduced his leave of absence to the period of June 21 through July 17, 1981. He said he did not attend the "last two weeks of school" because they duplicated "the Intelligence Analyst Course which I have just completed." Another reason given for shortening his absence was that the lack of pay created a financial and mental strain on himself and his family.[1]

---

[1]Appellant had requested permission to attend four courses. The first two were from June 21 to July 3 and July 5 to July 17. These were described as "Intelligence Analyst 96B, Phase I and Phase II." The third course that he

Appellant appealed to the New Jersey Civil Service Commission seeking full pay for his period of absence. Appellant relied in part on *N.J.S.A.* 38A:4-4 which provides generally that public employees who are members of the organized militia shall be entitled to leave of absence "without loss of pay or time" on all days during which they shall be engaged "in active duty, active duty for training or other duty ordered by the Governor; provided, however, that the leaves of absence for active duty or active duty for training shall not exceed 90 days in the aggregate in any one year." Subsection (b) provides that leave of absence for such military duty shall be in addition to regular vacation allowed to public employees.

The issue in the case is whether the statute mandates leave with pay for "active duty for training" when the National Guardsman is not required or mandated to perform that duty at any given time. Appellant contends that the duty is designated full time training duty (FTTD) performed under orders of the State of New Jersey, Department of Defense. Orders were forwarded to appellant after his application to attend the courses was approved. However, subsection (k) of the additional instructions contained in the orders recites, "You are ordered to FTTD with your consent and the consent of the Governor." Separate orders were issued for each course and were designated "By order of the Governor," but these were signed by the chief of staff in the New Jersey Department of Defense. The fact that orders were entered did not make appellant's performance of training duty required or compulsory duty within the meaning of the law being discussed. "Ordered by the Governor"

---

sought to attend ran from July 19 to July 31 and was entitled "S-2 Combat Operations." The fourth course, scheduled to be given at Ft. Bragg from August 9 to August 21, was entitled "Opposing Forces Europe, Operations and Intelligence." Apparently, his request to attend the fourth course was not approved. There is also nothing in the record before us to show that the third course, entitled "S-2 Combat Operations," was a duplication of the Intelligence Analyst course which appellant, on the form filed with the Camden Police Department, said he had "just completed."

as used in *N.J.S.A.* 38A:4–4 undoubtedly refers to the Governor's power to order the State militia to "active duty" in case of insurrection, breach of the peace, natural disaster or imminent danger to public safety.

A number of statutes deal with military leaves of absence. *N.J.S.A.* 11:24A–2 provides for leave with pay for a period of field training which a public employee is "required to undergo." Identical language is contained in *N.J.S.A.* 11:14–1 which applies to State employees. *N.J.S.A.* 38:23–1 provides for leave of absence with pay for members of the organized military reserves when "engaged in field training." In *Lynch v. Edgewater Bor.,* 8 *N.J.* 279, 290 (1951), our Supreme Court held that the phrase "on all days on which he shall be engaged in field training" within the meaning of *N.J.S.A.* 38:23–1 probably reflected the Legislature's view that mandatory payment of civilian compensation was justified for such training as the law "required" a member of the National Guard or other reserve forces to undergo. The court opined that the Legislature did not consider payment of civilian compensation justified "in cases where individuals could select active duty training for extended periods of time," although that duty also served a public purpose. *Ibid.*

In deciding *Lynch, supra,* the Supreme Court referred to *R.S.* 38:3–38, which derived from *L.*1937, *c.* 49. That section provided that members of the inactive National Guard "may be required to attend field training," but the court noted that it provided for no other compulsory military service. 8 *N.J.* at 288. The opinion in *Lynch* then referred to *R.S.* 38:12–4, which also derived from *L.*1937, *c.* 49, and was the predecessor of *N.J.S.A.* 38A:4–4. *R.S.* 38:12–4 was referred to in *Lynch* because it provided for leaves of absence with pay for state and municipal employees who are members of the National Guard while "engaged in field training or other duty ordered by the Governor." The court in *Lynch* emphasized the compulsory nature of field training and other ordered duty as a justification for leaves of absence with pay.

*N.J.S.A.* 38A:4–4 was enacted by *L.*1963, *c.* 109. The phrase "field training or other active duty ordered by the Governor" contained in *R.S.* 38:12–4 was replaced by "active duty, active duty for training or other duty ordered by the Governor." As noted, the former statute had been construed by *Lynch* in *dictum* to refer to compulsory military training. While the terms "active duty" and "active duty for training" are broader than "field training," this change in language may simply represent more appropriate terminology for the military training of today. *N.J.S.A.* 38A:1–1 *et seq.* no longer use the phrase, "field training." *N.J.S.A.* 38A:1–1 defines active duty and other pertinent terms, but the term "field training" does not appear.

██ Considering the construction put on this law in 1951 by our Supreme Court in *Lynch, supra,* we conclude that by the language of *N.J.S.A.* 38A:4–4 the Legislature did not intend to give members of the National Guard the added benefit of compulsory civilian pay while on non-required, voluntary training duty. Had the Legislature intended to change the prior interpretation of these laws a more specific expression of intent should have been used. We note, incidentally, that the language of the corresponding civil service statute, *N.J.S.A.* 11:24A–2, adopted by *L.*1939, *c.* 232, has not been changed. *N.J.S.A.* 11:24A–2 still provides that leave of absence with pay is mandated for National Guard members "for the period of field training" only if they are "required to undergo field training".

██ Much of the material that has been cited in this appeal is not helpful in deciding this issue. Appellant refers to the Veteran Reemployment Rights Act, 38 *U.S.C.A.* §§ 2021–2026. However, that law is concerned only with the right of reemployment after military service, not with payment during military leave. *Monroe v. Standard Oil Co.,* 452 *U.S.* 549, 101 *S.Ct.* 2510, 69 *L.Ed.*2d 226 (1981). Nor do we find the regulations adopted by the Civil Service Commission dispositive of this issue. We note, nevertheless, that *N.J.A.C.* 4.1–17.3(d) of the Civil Service Rules provides for leave of absence with pay for National Guard

members and reservists who are "required to undergo annual field training or annual active duty for training." The Civil Service Personnel Manual explains in a note attached to subpart 17–3.102(d) that:

The key factor to be considered is whether the employee is being ordered to the type of duty specified and defined in the regulation [*N.J.A.C.* 4.1–17.3(d)].

The facts in this case demonstrate that appellant Robert Hill retained considerable discretion as to the time he wished to spend in training and what courses he wished to attend. Municipalities would be greatly burdened financially if they were required to pay civilian compensation to National Guard members who elect to spend approximately three months per year in classroom training in addition to their regular vacation time and sick leave time. We conclude that the Legislature did not intend to provide such extensive benefits for someone whose principal occupation is full-time municipal employment.

Affirmed.